**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

**SCOTWOOD INDUSTRIES, INC.**

        **Plaintiffs/Counter-Defendant,**        Case No. 05-2180 - JWL

v.

**FRANK MILLER & SONS, INC.**

        **Defendant/Counter-Plaintiff.**

**MEMORANDUM AND ORDER**

This case involves a contractual dispute concerning the sale of goods by Scotwood Industries, Inc. ("Scotwood") to Frank Miller & Sons, Inc. ("Miller and Sons"). Scotwood initially sued in Kansas state court for a declaratory judgment and to collect payment for shipments of calcium chloride flake it delivered to Miller and Sons. In response, Miller and Sons removed the action to federal court and asserted counterclaims under the Uniform Commercial Code ("UCC") for breach of contract based both on theories of rejection and revocation of acceptance, breach of implied warranty of merchantability and breach of express warranty, and under Kansas common law for unjust enrichment and promissory estoppel.

This matter comes before the court on Scotwood's motion for summary judgment as a matter of law against Miller and Sons' counterclaims (doc. 44). For the reasons explained below, the motion is granted in part and denied in part. Specifically, the court will grant the

1

motion as to the counterclaims based on the theory of rejection, breach of express warranty, unjust enrichment, and promissory estoppel; the court will deny the motion as to the counterclaimsju based on revocation of acceptance and breach of implied warranty of merchantability.

## BACKGROUND

As a wholesaler, Scotwood sells calcium chloride flake to suppliers, including Miller and Sons, for use in ice melt products. In 2004, Miller and Sons ordered from Scotwood a large number of bags of 74-75% calcium chloride flake.[1] In all, from July 19, 2004, until September 3, 2004, Scotwood delivered 37 shipments of calcium chloride flake to Miller and Sons' warehouse. Following each delivery, Scotwood forwarded to Miller and Sons an invoice listing numerous "Terms and Conditions," including paragraph 8(a), which purports to limit the time for bringing any claims against Scotwood.

Although it paid 35 of the 37 invoices for the 37 shipments it received, Miller and Sons alleges that the calcium chloride flake was substantially defective because, first, the bags it was delivered in were ripped and, second, the calcium chloride flake in the bags was chunked. Calcium chloride is extremely hygroscopic, which means that it will absorb massive amounts of moisture and chunk together if it is exposed. This property makes it vital that packing and storing of the flake is proper; chunking makes calcium chloride flake largely unusable in ice

---

[1] The specific amount of calcium chloride flake that Miller and Sons received is unclear from the conflicted record. The type of bags it was delivered in is also unclear. At one point, there is a statement that Scotwood used bulk bags and 25 lb bags, but that is inconsistent with another statement that refers to use of bulk bags and 25 kg bags.

melt products. Miller and Sons alleges that it was forced to conduct the labor-intensive process of sorting the chunked calcium chloride from the usable flakes in the shipments it received from Scotwood. It does admit, however, that it retained the calcium chloride flake and exercised dominion and control by processing much of it for its own use.

Much of the factual record, in fact, is in dispute. The parties dispute the industry standard for a reasonable inspection of calcium chloride flake; they also dispute whether in this case Miller and Sons conducted a reasonable inspection of each delivery. Also, the parties disagree about the timing and the extent of Miller and Sons' objections regarding the quality of the 37 shipments of calcium chloride flake. Miller and Sons alleges that it made numerous objections regarding the quality of the calcium chloride flake beginning as early as August 2004. Scotwood disputes this, and it also denies giving assurances that it would remedy the alleged defects; it contends that all assurances related to future shipments. Scotwood further alleges that Miller and Sons allowed the quality of the flake to deteriorate while in its possession, but Miller and Sons offers evidence that Scotwood declined to make arrangements to remove the flake from Miller and Sons' warehouse when repeatedly asked to do so. In sum, there are numerous issues of material fact in dispute, although the parties seemingly agree that an email from Miller and Sons to Scotwood on October 8, 2004, purportedly revoked acceptance of any calcium chloride flake that Miller and Sons had previously accepted from Scotwood.[2]

---

[2] To be clear, Miller and Sons denies acceptance of any of the goods.

## **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279

F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)); *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## DISCUSSION

**1.    Choice of Law**

For purposes of this motion, the parties agree that Kansas law governs their contractual dispute under the UCC. Because the choice of Kansas law is entirely reasonable, the court will

analyze the substantive issues of the case under Kansas law.[3]

## 2. Whether the Time Limitation Provision Included in the Invoices Forwarded to Miller and Sons "Materially Alters" the Parties' Agreement

Scotwood first contends that all of Miller and Sons' counterclaims are barred as a matter of law based on a time limitation clause contained in the invoices Scotwood delivered after each shipment of calcium chloride flake. Beginning in June 2004, Miller and Sons began placing orders for delivery of calcium chloride flake. Scotwood accepted these offers and delivered 37 shipments between July 19, 2004, and September 3, 2004. After each shipment, Scotwood forwarded invoices to Miller and Sons that specifically included its "Terms and Conditions" of sale. Scotwood identifies that paragraph 8(a) of its "Terms and Conditions" states:

> Within forty-eight (48) hours after receipt of each shipment of the goods, Buyer shall examine the goods for any damage, defect or shortage. Any and all claims for any cause of action whatsoever (whether the cause of action shall be based in contract, warranty, negligence, strict liability, other tort, or otherwise [sic] shall be waived by Buyer unless presented in writing and received by Seller within ten (10) days after Buyer's receipt of the goods for which the claim was made or, if the claim is for non-delivery of goods, within thirty (30) days after the date upon which the goods were to be delivered, provided that as to any claim not reasonably discoverable within the ten (10) day period as set forth above, (including that discoverable only in processing, further manufacturing, or other use or resale) any claim shall be made in writing and received by Seller within thirty (30) days after Buyer's receipt of the goods for which the claim was

---

[3] To the extent the court cites case law from other states, the court emphasizes that "[b]ecause the UCC is intended to be applied uniformly across the various states, courts routinely turn to decisions from other states when there is no case law on point within the relevant jurisdiction." *National Environmental Service Co. v. Ronan Engineering Co.*, 256 F.3d 995, 1004 (10th Cir. 2001).

>made, or within ten (10) days after Buyer learns of all facts giving rise to the claim, whichever occurs first. Failure of Seller to receive written notice of any claim from Buyer within the acceptable time period as previously set forth, shall be deemed an absolute and unconditional waiver by Buyer of any and all claims, irrespective of whether the facts giving rise to the claim shall have then been discovered or whether processing, further manufacture, or other use or resale of the goods shall have taken place.

Because Scotwood included this provision in each invoice, Scotwood argues that—even though it never specifically alerted Miller and Sons to this limitation—its additional terms became part of the parties' contract under the so-called "battle of the forms" section of the UCC. That section states:

>(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>(a) the offer expressly limits acceptance to the terms of the offer;
>(b) they materially alter it; or
>(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

K.S.A. § 84-2-207.

The parties agree, in fact, that in deciding whether to apply the time limitation provision in each invoice forwarded to Miller and Sons, the controlling section of the UCC is § 2-207(2)(b). Under that section, additional terms between merchants become part of the contract "unless they materially alter it." *Id*. The parties agree for these purposes that they are both merchants and that the time limitation provision includes additional terms. Thus, the parties concur that the ultimate issue is whether the time limitation in paragraph 8(a)

7

"materially alters" their contract.

Contrary to Scotwood's assertion, "[t]he issue of whether a term materially alters the contract for the purposes of § 2-207(2)(b) is a question of fact that must be determined in light of the facts of the case and the parties' expectations." *Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 765 (10th Cir. 1983). *See also American Ins. Co. v. El Paso Pipe and Supply Co.*, 978 F.2d 1185, 1189-90 (10th Cir. 1992) (equating "materially alter" with invoking "hardship or surprise" and urging that this is a factual question unique to the circumstances of each case) (citing Official Comment 4). To find that paragraph 8(a) does not "materially alter" the parties' agreement, the court would have to find, as a matter of law, that paragraph 8(a) is reasonable and therefore does not alter what Miller and Sons' duty would have been had it not been included.

But there are numerous disputed factual issues regarding the reasonableness of the time limitation provision. Specifically, it is disputed what amount of time is reasonable for a proper inspection of calcium chloride flake. Miller and Sons identifies numerous parts in the record that suggest it is not practical to inspect calcium chloride until it is processed. Its experts have opined that visual inspections are insufficient to identify whether chunking is present, and that opening the bags before processing begins would expose the flake to moisture and cause chunking. In other words, any testing before processing would be destructive. It is also a fact issue whether calcium chloride is a perishable good. This, in turn, further undercuts Scotwood's assertion that its time limitation provision is reasonable as a matter of law. Therefore, it is ultimately a genuinely disputed issue of material fact whether paragraph 8(a)

of the "Terms and Conditions" of the invoices "materially alters" the contract between Miller and Sons and Scotwood. The court, therefore, cannot rule as a matter of law that all of Miller and Sons' counterclaims are barred as untimely, and the court will address the merits of the summary judgment motion regarding each of Miller and Sons' counterclaims.

### 3.     Counterclaim Based on the Theory of Rejection

In its first counterclaim, Miller and Sons contends that it rejected the shipments of calcium chloride flake from Scotwood. To prove that it rejected the goods, Miller and Sons bears the burden of showing that: (1) it did not accept the goods; and (2) it rejected the goods within a reasonable time after delivery and it seasonably notified Scotwood of its rejection. *See* K.S.A. § 84-2-602; § 84-2-606.

In deciding whether Miller and Sons accepted the calcium chloride, the first step is to define acceptance:

> (1) Acceptance of goods occurs when the buyer
> (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or
> (b) fails to make an effective rejection (subsection (1) of section 84-2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
> (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

K.S.A. § 84-2-606:

Applying this definition, the court finds that, under § 2-606(1)(c) at the very least, Miller and Sons accepted the calcium chloride flake because it processed many of the shipments it received from Scotwood and then sold this processed material on its own behalf.

*See CMI Corp. v. Leemar Steel Co.*, 733 F.2d 1410, 1414 (10th Cir.1984) ("A buyer is deemed to have accepted goods when, without making any effort to reject them, he receives the goods, processes them, and sells the finished product.") (citation omitted).  Ultimately, Miller and Sons admits that it exercised control over the calcium chloride flake, which means that "[e]ven if it were said that [it] initially rejected the [goods], [its] continued use of it converted [its] rejection into an acceptance." *Linscott v. Smith*, 3 Kan.App.2d 1, 4 (1978). *Accord Cook Associates, Inc. v. PCS Sales (USA) Inc.*, 271 F.Supp.2d 1343, 1351 (D. Utah 2003) (buyer accepted goods "by mixing them with oil and emulsifier to make emulsion explosives, which is inconsistent with [the seller's] ownership of the products"); *Weil v. Murray*, 161 F.Supp.2d 250, 256 (S.D.N.Y. 2001) ("[buyer's] participation in the alteration of the painting, regardless of whether such alteration increased its value, was an act inconsistent with [seller's] ownership").[4]

Miller and Sons does argue that, to the extent it processed some of the calcium chloride flake for its own use, it did so in order to mitigate its damages.  The suggestion that acceptance does not occur where a party mitigates its damages, however, is unsupported by any case law.  Ultimately, it is undisputed that Miller and Sons exercised dominion over the shipments of calcium chloride flake by processing them for its own use.  This is the essence of acceptance

---

[4] A possible argument not made by Miller and Sons is that it accepted only some of the goods because it processed only some of the bags of calcium chloride flake it received.  Aside from being waived as an argument never presented, this ignores the fact that Miller and Sons continues to possess the entire quantity of the 37 shipments of calcium chloride flake delivered by Scotwood.

under § 2-606(1)(c).

Because Miller and Sons cannot meet the first element of rejection, the court need not continue in its analysis of the rejection counterclaim. In sum, because Miller and Sons accepted the goods and acceptance precludes rejection, the court grants the motion for summary judgment as a matter of law against Miller and Sons' counterclaim based on a theory of rejection.

**4.     Counterclaim Based on Theory of Revocation of Acceptance**

Although Miller and Sons accepted the goods, this does not foreclose Miller and Sons from asserting its counterclaim based on a theory of revocation. "'Revocation of acceptance is a refusal to keep delivered goods that occurs after a buyer has accepted and the time for rejection has expired.'" *Queen v. Lynch Jewelers, LLC*, 30 Kan. App. 2d 1026, 1036 (2002) (quoting *Johnson v. General Motors Corp.*, 233 Kan. 1044, 1046 (1983)). In addition, there is little practical significance between revocation and rejection because "[a] buyer who properly revokes has the same rights with regard to the goods involved as if he had rejected them." *CMI Corp. v. Leemar Steel Co., Inc.*, 733 F.2d 1410, 1415 (10th Cir. 1984); *see also* K.S.A. § 84-2-608(3) ("A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.").

Revocation is governed by K.S.A. § 84-2-608, which states:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
(b) without discovery of such nonconformity if his acceptance was reasonably

11

>induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

*Id.*

Thus, a buyer may revoke acceptance when (1) nonconformity substantially impairs the value of the goods to the buyer; (2) the buyer revokes within a reasonable time based on difficulty in discovering defects or because the seller provided assurances; and (3) the buyer revokes before any substantial change in the goods not caused by their own defects. *Id.* The parties dispute each of these elements.

### a.    Substantial Impairment

The first element of revocation establishes that "[a] buyer may only revoke acceptance where the nonconformity of the goods substantially impairs the value of the goods to the buyer." *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 461-62 (1983). "The burden is on the buyer to establish any breach with respect to the goods accepted." K.S.A. § 84-2-607(3). In *McGilbray v. Scholfield Winnebago, Inc.*, 221 Kan. 605 (1977), "the Kansas Supreme Court adopted a subjective-objective test for determining when the substantial impairment requirement is met. A buyer must show the nonconformity of the goods, the needs and circumstances of the buyer (subjectively), and that the nonconformity in fact (objectively) impaired the value of the goods to the buyer." K.S.A. § 84-2-608, Kansas Comment 2.

In applying this test, however, "[n]onconformity, the needs and circumstances of the purchaser and substantial impairment of value to a purchaser are all issues to be determined

12

by a trier of fact." *Newmaster v. Southeast Equipment, Inc*., 231 Kan. 466, Syl. 2 (1982); *see also McGilbray v. Scholfield Winnebago, Inc*., 221 Kan. 605, 609 (1977) (same).

In this case, Miller and Sons clearly alleges a substantial impairment in the calcium chloride flake it received. Scotwood accuses Miller and Sons of issuing a sham affidavit to create an issue of fact, but the court disagrees with this characterization. Mr. Miller stated in his deposition that Miller and Sons salvaged anywhere from one-third to two-thirds of the calcium chloride flake it received from Scotwood, and Mr. Miller's subsequent affidavit is consistent with this estimation. Obviously, there is a wide variation between one-third and two-thirds. There is no stark contrast between this figure and the later assertion that only 30-35% of the processed bulk bags was usable flake and that only 50% of the processed 25 kg bags was usable flake. Miller and Sons also alleges that Scotwood knew that it required a much higher purity level of flake than it received. Thus, there is a genuine issue of material fact regarding substantial impairment of the value of the goods to Miller and Sons.

**b.      Reasonableness of the Timing of Revocation and the Difficulty of Discovering the Alleged Defects**

Similarly, the reasonableness of the timing of revocation on October 8, 2004, is a genuinely disputed issue of material fact. When asked to decide whether a party pursued an "objectively reasonable" course, the Tenth Circuit recently instructed that "we leave that determination for the jury." *Johnson v. Riddle*, 443 F.3d 723, 731 (10th Cir. 2006). In this case, Scotwood cannot demonstrate, as a matter of law, that Miller and Sons delayed its revocation for an unreasonable amount of time. *See CMI Corp. v. Leemar Steel Co., Inc*., 733

13

F.2d 1410, 1415 (10th Cir. 1984) ("The question of whether a buyer's revocation of an acceptance is timely is, as with rejections, a question of fact.") (citing *Rowe International, Inc. v. J-B Enterprises, Inc.*, 647 F.2d 830 (8th Cir.1981)); *see also Jaramillo v. Gonzales*, 50 P.3d 554, 559 (N.M. App. 2002) ("It is a question of fact whether the time between acceptance and revocation was reasonable."); *Johannsen v. Minnesota Valley Ford Tractor Co., Inc.*, 304 N.W.2d 654, 658 (Minn. 1981) ("The issue of what constitutes a reasonable time within the context of revocation of acceptance is a jury question that depends on the facts and circumstances of the case.").

Here, there are a multitude of factual issues in dispute. Scotwood contends that Miller and Sons did not inform Scotwood of any problems until months after problems first surfaced, but Miller and Sons refutes this assertion with numerous citations to the record. Poignant are the included emails in the record that Jim Miller, Sr., sent to various employees of Scotwood, primarily Carl Wetzel and Chase Wilson. In the first email on August 5, 2004, Mr. Miller informed Scotwood: "We have had problems on the last three shipments of Flake. . . . If this cannot be corrected we will want to stop all shipments. The mess is too much to deal with!!!" Then, on August 13, 2004, he notified Scotwood in an email: "We continue to have problems . . . . If this cannot be immediately corrected I want to stop all further shipments." He continued to alert Scotwood of defects, as evidenced in a September 1, 2004, email to Scotwood: "We should have rejected 9 out of the 20 bulk bags that came in this morning. I think this is not going to work out and we should just put a stop to everything." Finally, there is the October 8, 2004, email that revokes acceptance: "All in all I feel this is totally

14

unacceptable and needs to be immediately corrected.  We are willing to discuss Scotwood picking up the material and replacing it, or picking up the material and reimburse Frank Miller & Sons immediately for the invoices which we have paid, plus compensation for all the extra work that has been required . . . ."  In all, Miller and Sons alleges that it stopped shipments three separate instances and that it continually alerted Scotwood numerous times that it was receiving substantially defective shipments of calcium chloride flake.

The parties agree that Mr. Miller's October 8, 2004, email was intended to revoke acceptance. Scotwood alleges that this date was unreasonably untimely because of the perishable nature of calcium chloride flake, but this is a disputed issue of fact based on the opinions of Miller and Sons' experts indicating that, ordinarily, calcium chloride flake can maintain its purity for 3-5 years if properly stored.  Whether Miller and Sons properly stored the shipments after receipt from Scotwood is a fact question.

Miller and Sons also contends that the evidence shows that throughout this entire time, Scotwood continually offered assurances that it would remedy the alleged defects.  When a seller offers assurances to a buyer, this extends the time frame for reasonably revoking acceptance. *See Four Sons Bakery*, 542 F.2d at 832; *Hemmert Agricultural Aviation, Inc. v. Mid-Continent Aircraft Corp.*, 663 F. Supp. 1546, 1551 (D. Kan. 1987).  In arguing that all assurances related to future shipments, Scotwood points the court to Mr. Miller's deposition and from it quotes selectively, but this is unavailing.  Questions of material fact remain.

Finally, the time frame for a reasonable revocation is further extended where, as here, the alleged defects were latent, particularly where the buyer could not inspect the goods before

beginning production without contaminating them. Miller and Sons presents evidence that it is not practical to inspect calcium chloride flake until the beginning of actual production. Its experts have opined that visual inspections are insufficient to identify chunking and that opening the bags before processing begins, in fact, would expose the flake to moisture and cause chunking. In other words, any testing before processing would have been destructive. Scotwood disputes this, but again, the dispute creates a genuine issue of material fact.

### c.     No Substantial Change

Under the final element of revocation, Scotwood argues that Miller & Sons retained the calcium chloride for too long before revoking its acceptance. It contends that, as a matter of law, Miller and Sons is barred from revoking its acceptance based on a substantial change in the goods. The court is precluded from ruling as a matter of law on this issue, however, because "[w]hat constitutes 'substantial change' is a question of fact." *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 463-64 (1983) (citing § 2-608(2)). And it is largely disputed whether Miller and Sons revoked its acceptance before a substantial change in the flake occurred. As the October 8, 2004, email from Mr. Miller quoted above explicitly indicates, Miller and Sons early on attempted to arrange for Scotwood remove the goods from Miller and Sons' possession, but Scotwood apparently declined. This issue of fact is further evidenced by numerous other emails, apparently never answered by Scotwood, in which Mr. Miller makes similar requests. At the very least, it is a disputed issue of fact whether Miller and Sons revoked its acceptance before a substantial deterioration in the goods occurred, particularly when Scotwood refused to arrange to pick up the flake from Miller and Sons when directly and

repeatedly asked to do so.[5]

In sum, "the issue of whether a buyer has effectively revoked acceptance is a factual one." *Deere & Co. v. Johnson*, 271 F.3d 613, 621 (5th Cir. 2001). Numerous factual issues are in dispute here. Scotwood, therefore, is not entitled to summary judgment as a matter of law against Miller and Sons' counterclaim for breach of contract based on the theory of revocation of acceptance.

**5.       Counterclaim for Implied Warranty of Merchantability**

In Miller and Sons' third counterclaim, it contends that Scotwood breached an implied warranty of merchantability. Because Scotwood does not dispute that it is a merchant with respect to calcium chloride flake, "a warranty that the goods shall be merchantable is implied" in the contract between the parties. K.S.A. § 84-2-314. "To demonstrate a breach of the implied warranty of merchantability, [Miller and Sons] must show that the goods were defective, that the defect was present when the goods left [Scotwood's] control, and that the defect caused the injury sustained by [Miller and Sons]." *Dieker v. Case Corp.*, 276 Kan. 141, 162 (2003). The only element of this warranty that Scotwood places at controversy is whether the calcium chloride was "fit for the ordinary purposes for which" it is used. *Id.* Under Kansas law, "a buyer can show a product is unmerchantable if it is defective when it leaves the

---

[5] To the extent Scotwood alleges that Miller and Sons stored the flake in an unair-conditioned warehouse or stored the flake outdoors, these assertions do not even warrant discussion, particularly given Scotwood's failure to respond to Miller and Sons' arguments on this issue. The facts are in dispute, as well as the inferences which a trier of fact could draw from them.

manufacturer's control." *Stair v. Gaylord*, 232 Kan. 765, 772 (1983) (citing *Butterfield v. Pepsi-Cola Bottling Co.*, 210 Kan. 123, 126 (1972)).

Here, Scotwood nominally attempts to argue that Miller and Sons has not met its burden to demonstrate a genuine issue of material fact that the calcium chloride flake was defective, but this challenge is patently meritless. Initially, the court's discussion, *supra*, under section 4.a. of the revocation counterclaim regarding "substantial impairment" applies with equal force here. That discussion alone establishes that Miller and Sons has produced evidence that the calcium chloride flake was defective when it left Scotwood's control. The court, however, notes that Miller and Sons offers additional evidence. Not only does Miller and Sons cite the opinions of two expert witnesses who contend that the flake was defective when it left Scotwood's control, but Miller and Sons also provides evidence that Scotwood, in fact, knew that it was selling defective flake because it bought the product for a reduced price based on its defective condition. Based on this slew of evidence indicating a disputed issue of material fact whether the goods were defective, "the question of whether [Scotwood] breached the implied warranty of merchantability should [be] allowed to go to the jury." S*tair*, 232 Kan. at 772; *see also Dieker*, 276 Kan. at 163 ("[v]iewed in the light most favorable to [Miller and Sons], we find that this evidence [is] sufficient to show that a defect could have existed when the [calcium chloride flake] left [Scotwood's] custody and control.").

### 6.     **Miller and Sons Abandoned its Remaining Counterclaims**

With respect to Miller and Sons' counterclaims for breach of express warranty, unjust enrichment, and promissory estoppel, Scotwood contends that summary judgment is

18

appropriate as a matter of law because no genuine issues of material fact are in dispute. Miller and Sons, in its response, did not address these counterclaims in any respect. As a result, as argued for by Scotwood in its Reply brief (which Miller and Sons has not sought the opportunity to refute), the court concludes that Miller and Sons has abandoned these counterclaims and grants summary judgment in favor of Scotwood based on Miller and Sons' failure to respond. *See Hinsdale v. City of Liberal*, 2001 WL 980781, at *16-17 (10th Cir. 2001) (affirming district court's conclusion that plaintiff had abandoned certain claims by failing to address those claims in response to the motion for summary judgment because the failure to respond was "fatal" to those claims) (citing *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992)).[6]

## CONCLUSION

For the reasons explained above, Scotwood's motion for summary judgment as a matter of law is granted in part and denied in part. Specifically, the motion is granted and the court dismisses, as a matter of law, the counterclaims for breach of contract based on a theory of rejection, breach of express warranty, unjust enrichment, and promissory estoppel; but the motion is denied as to the counterclaims for breach of contract based on a theory of revocation of acceptance and breach of implied warranty of merchantability.

---

[6] If the court has misapprehended Miller and Sons' position on these counterclaims, Miller and Sons should avail itself of a timely motion to reconsider, being mindful of the heavy burden on it–especially in light of the fact that Scotwood called this failure to address those arguments to Miller and Sons' attention in its Reply brief.

**IT IS THEREFORE ORDERED BY THE COURT** that Scotwood's motion for summary judgment against Miller and Sons' counterclaims (doc. 40) is granted in part and denied in part as set forth in full above.

**IT IS SO ORDERED** this 16th day of June, 2006.

> s/ John W. Lungstrum
> John W. Lungstrum
> United States District Judge